IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

HAROLD GENE MCKINNEY                                        PLAINTIFF

V.                              NO. 11-2173

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration          DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Harold Gene Mckinney, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed his applications for DIB and SSI on December 14, 2007, alleging an inability to work since August 5, 2005, due to "Bad back, bad knee, bad wrist, right shoulder, alcoholism." (Tr. 231, 235). An administrative hearing was held on March 20, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 22-45). On July 14, 2009, the ALJ issued an unfavorable decision, finding Plaintiff had the residual functional capacity to perform his past relevant work, and was therefore not disabled. (Tr. 51-62). On January 23, 2010, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the matter to an ALJ to resolve inconsistencies between the RFC finding and the

hypothetical question to the vocational expert (VE), and to evaluate Plaintiff's alleged mental impairments. (Tr. 64-67). Another hearing was held on August 3, 2010, during which Plaintiff was represented by an attorney. (Tr. 534-549).

By written decision dated November 24, 2010, the ALJ found Plaintiff had the following severe impairment: right inguinal hernia. (Tr. 11). However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix II, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform the full range of light work, and was capable of performing his past relevant work as an electric motor assembler. (Tr. 14-15).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on July 29, 2011. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 4, 5).

## II.    Evidence Presented:

Plaintiff was born in 1957 and completed the 11th grade in school. (Tr. 231, 240). The transcript contains records as far back as April of 2004, indicating that Plaintiff suffered from hypertension and back pain, and drank alcohol daily. (Tr. 336). Those records also reveal that Plaintiff was advised to discontinue alcohol and smoking. (Tr. 335, 336, 338, 340, 343, 346, 348, 349, 351).

In March of 2005, Plaintiff presented himself to the Cooper Clinic, concerned about his blood pressure and some dizziness. (Tr. 334). His hypertension was reported as moderately well

AO72A
(Rev. 8/82)

controlled on Enalapril.  (Tr. 334).  Although he also complained of back pain, he had normal range of motion in his extremities.  (Tr. 334).  Plaintiff also complained of anxiety and irritability, and was diagnosed with hypertension and anxiety disorder.  (Tr. 356).

By April 21, 2005, when Plaintiff presented to Cooper Clinic, his blood pressure was stable on Enalapril, and he was once again cautioned to stop smoking and drinking alcohol.  (Tr. 351).

On May 6, 2005, Plaintiff presented to St. Edward Mercy Medical Center, complaining of chest pain.  (Tr. 301).  At that time, he was reported as being a heavy smoker (around a pack a day for more than 30 years), and drank a 12 pack of beer a day for more than 20 years.  (Tr. 301).  It was reported that there was mildly increased left ventricular ejection fraction of 49%, with some mild apical hypokinesia.[1]  (Tr. 302).  X-rays of Plaintiff's chest revealed mild hyperinflation, and no acute infiltrate was evident.  (Tr. 332).

Dr. Timothy C. Waack, a cardiac consultant, noted that Plaintiff's gross motor strength was normal, as was his electrocardiogram.  (Tr. 305).  The impression by Dr. Waack was:

> 1. Chest pain with numbness to his arms in a patient with family history and smoking as risk factors and male sex.  Could be coronary artery disease.
>      Episodes of weakness, dizziness and shortness of breath with a history of rapid heart rate by a paramedical, question possibility of episodic atrial fibrillation or holiday heart syndrome.
> 2. Alcohol excess
> 3. Tobacco excess
> 4. History of bright red blood per stools, possible hemorrhoids
> 5. Elevated MCV

(Tr. 305-306).  Dr. Waack recommended that Plaintiff undergo an echocardiogram to evaluate

---

[1] Hypokinesia - Abnormally decreased mobility; abnormally decreased motor function or activity.  Dorland's Illustrated Medical Dictionary 915 (31st ed. 2007).

AO72A
(Rev. 8/82)

for cardiomyopathy.  (Tr. 306).

An echocardiogram revealed "[n]o definite evidence of any stress induced ischemia. Fixed diminished activity apex and inferior wall may reflect attenuation artifact or scar.  Mildly decreased left ventricular ejection fraction calculated at 49% with there being mild apical hypokinesia."  (Tr. 295).  The overall impression was: clinically negative and no definite evidence of any stress induced ischemia.  (Tr. 297, 300, 320).  Plaintiff was once again advised to quit smoking and drinking alcohol on May 10, 2005.  (Tr. 349).  On May 24, 2005, Plaintiff's blood pressure was found to be doing better, and he was again advised to stop drinking alcohol. (Tr. 348).

On May 25, 2005, Plaintiff reported having pain with range of motion of the left shoulder, and was assessed with hypertension, shortness of breath, history of cardiomyopathy, left shoulder pain, and fatigue.  (Tr. 346).  On June 9, 2005, Plaintiff's hypertension was reported as stable (Tr. 344), and on June 22, 2005, it was reported as "running better."  (Tr. 342).

On July 19, 2005, Plaintiff complained of anxiety, and it was reported that he had increased his Enalapril to 15 mg in the morning and 10 mg at night, noting that his blood pressure had been doing pretty well.  (Tr. 340).  Plaintiff continued to smoke and drink alcohol, even though he had been advised to quit both numerous times.

On February 9, 2007, Plaintiff presented himself to the emergency room complaining of right knee pain as a result of an injury.  (Tr. 365-366).  The exam revealed no knee effusion or deformity, no soft tissue swelling, and Plaintiff had full range of motion of the knee with full extension and flexion.  (Tr. 365).  The doctor suspected he had a mild medial meniscus injury, and placed him in a knee immobilizer to use whenever he was up bearing weight.  (Tr. 366).  X-

-4-

rays of his right knee revealed minimal medial compartment narrowing, and no fracture or dislocation was evident radiographically.  (Tr. 372).

In addition, Plaintiff presented himself to the emergency room two more times in 2007, one time reporting taking ½ tablet of Lorcet and drinking a fifth of vodka and a 12 pack of beer and threatening to cut his fiancès throat, and the other reporting a plan of using a gun to commit suicide.  (Tr. 376, 384).

On February 26, 2008, a General Physical Examination for the Social Security Administration was performed by Dr. Stanley L. Reyenga.  (Tr. 399-404, 447-451).  Upon examination, Plaintiff had normal range of motion of his extremities.  (Tr. 401).  He was diagnosed with:

1. Alcoholism
2. Chronic low back pain
3. Chronic left shoulder pain
4. Chronic left knee pain
5. Hx of carpal tunnel syndrome at wrist.

(Tr. 403).   No limitations were indicated by Dr. Reyenga.  (Tr. 403).

On February 27, 2008, a Physical RFC Assessment was completed by non-examining consultant, Dr. Jerry Mann.  (Tr. 405-412).  Dr. Mann found that Plaintiff could occasionally lift and/or carry (including upward pulling) 20 pounds; frequently lift and/or carry (including upward pulling) 10 pounds; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; push and/or pull (including operation of hand and/or foot controls) - unlimited, other than as shown for lift and/or carry.  (Tr. 406).   No postural, manipulative, visual, communicative or environmental limitations were established.  (Tr. 407-409).

AO72A
(Rev. 8/82)

On March 26, 2008, a Mental Status/Diagnostic Examination was performed by Denise LaGrand, Psy.D., Licensed Clinical Psychologist. (Tr. 416-421, 453-458). Plaintiff reported to Dr. LaGrand that his back, shoulder, knee and ankle problems affected his ability to work because he was not able to lift any weight. (Tr. 416). He did not report any psychological problems that affected his ability to work, was not receiving any mental health treatment, and had not received any in the past. (Tr. 416). Plaintiff was not taking any medication at the time of the evaluation. (Tr. 416). Plaintiff reported that he did not have a primary care physician, and that his last medical attention was approximately five years prior when he saw Dr. Jackson for high blood pressure and back problems. (Tr. 417). Plaintiff reported smoking one pack of cigarettes a day and drinking a case of beer a day. (Tr. 417). Plaintiff's posture and gait were normal, his motor activity was normal, and he did not display any unusual mannerisms or involuntary movements. (Tr. 418). He did not appear to be in any pain. (Tr. 418). Dr. LaGrand reported that while Plaintiff did not meet the criteria for a major depressive disorder, he did meet the criteria for dysthymic disorder. (Tr. 418). Dr. LaGrand reported Plaintiff's estimated IQ to be in the average range, and that his judgment was estimated to be fairly consistent with his estimated IQ. (Tr. 419). She diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Alcohol Abuse/Dependance |
| | Pain Disorder, due to general medical condition |
| Axis II: | No diagnosis |
| Axis III: | Deferred |
| Axis IV: | Occupational problems |
| Axis V: | 55-65 |

(Tr. 420). Plaintiff was reported as having no difficulty with personal hygiene, dressing, preparing food or eating an adequate diet. (Tr. 420). Dr. LaGrand found Plaintiff's memory

-6-

skills appeared to be adequate and no significant problems with persistence and pace were noted. (Tr. 420). She also noted that his ability to deal with instructions was adequate. (Tr. 420). She found that Plaintiff's capacity to cope with the typical mental/cognitive demands of basic work-like tasks and sustain concentration and persistence on basic tasks was adequate and that his capacity to complete work-like tasks within an acceptable time frame was fair. (Tr. 420). Dr. LaGrand concluded that Plaintiff's mental/emotional symptoms did not appear to significantly affect his performance, and that his application for disability seemed to be based primarily on physical factors. (Tr. 420).

On April 29, 2008, a Psychiatric Review Technique form was completed by non-examining consultant, Dr. Kay M. Gale. (Tr. 423-436). Dr. Gale concluded that Plaintiff had a mild degree of limitation in restriction of activities of daily living and difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 433). She concluded that Plaintiff seemed capable of semiskilled work. (Tr. 435). On the same date, Dr. Gale completed a Mental RFC Assessment, and concluded that Plaintiff was moderately limited in two of twenty categories and not significantly limited in eighteen of twenty categories. (Tr. 437-438. She concluded that Plaintiff was able to perform work where interpersonal contact was routine but superficial, e.g. grocery checker; complexity of tasks was learned by experience, with several variables, and used judgment within limits; and supervision required was little for routine but detailed for non-routine tasks. "Semi-skilled work." (Tr. 439).

On October 28, 2009, a Disability Physical, signed by an APN and stamped by Dr. Rebecca R. Floyd, indicates that Plaintiff was smoking ½ pack of cigarettes per day, had 5/5

strength in his upper and lower extremities, and no muscle atrophy. (Tr. 459-460). He was found to have a steady gait and could do all limb functions. H(Tr. 460). He had all normal range of motion except his lumbar spine - flexion - was 80 degrees and there was right paralumbar, around L4-5, tenderness. (Tr. 461). She diagnosed Plaintiff with chronic low back pain, a right inguinal hernia, and stated that Plaintiff had moderate lifting and excessive bending limitations due to his current medical conditions. (Tr. 462). On the same date a roentgenological report of the lumbar spine indicated that Plaintiff had mild degenerative changes with anterior osteophytes beginning L3-4 and L4-5. Slight superior endplate impression was suspected at least at the L3 level, possibly to a lesser degree at L4 and L5. "Mild lumbar levoconvex curve." (Tr. 463).

Dr. Kathleen M. Kralik, Ph.D., performed a Mental Diagnostic Evaluation on November 2, 2009. (Tr. 464-470). When Plaintiff was asked what had changed since he was last turned down for social security, he denied there had been a change in his condition. (Tr. 464). Plaintiff listed mental symptoms as depression and nervousness, but did not know what the symptoms were. (Tr. 464). Plaintiff reported that he received some substance abuse treatment 18 years previously, but never did any follow-up outpatient mental health treatment, although he attended "AA" for a time. (Tr. 464-465). At that time, Plaintiff was taking over the counter pain relievers, and was on no other medications. The last time Plaintiff said he went to a medical doctor for treatment was 4-5 years previously, and he was waiting to get his Medicaid denied in order to become eligible to receive services at the Good Samaritan Clinic. (Tr. 465). Plaintiff reported to Dr. Kralik that he was ultimately let go from his previous position at Baldor for "failure to follow instructions." (Tr. 465). Plaintiff stated that he last applied for a job independently two years previously, and Dr. Kralik noted that Plaintiff never answered the

question regarding why he had not sought less physically demanding occupations.  (Tr. 465).

Plaintiff reported smoking ½ pack of cigarettes daily and that he had alcohol two weeks prior,

drinking a 6 pack of beer, 1-2 times per month.  (Tr. 466).  Dr. Kralik noted that this was

inconsistent with what he reported to Dr. LaGrand in 2008, and that when he was confronted

about the discrepancy, he denied he had ever reported to Dr. LaGrand that he was drinking a case

of beer a day.  (Tr. 466).  Dr. Kralik noted that Plaintiff moved somewhat stiffly but did not

manifest significant pain behaviors overall.  (Tr. 466).  She reported that it was clear that he had

little insight into the impact of his substance abuse history on the occupational issues-and likely

on his perception of pain over time.  (Tr. 466).  She reported his estimated IQ to be greater than

85.  (Tr. 468).  She believed no significant mental or cognitive problems were evident, and

diagnosed Plaintiff as follows:

|  |  |
|---|---|
| Axis I: | Pain Disorder Associated with both Psychological Factors and a General Medical Condition |
|  | Alcohol Dependence; allegedly in partial remission; his report of this in question relative to the last Mental Diagnostic Examination report; |
| Axis II: | Rule out parasitic-dependent personality features |
| Axis V: | Estimated Current GAF - 45-55 |
|  | Estimated Highest GAF Past Year - 45-55 |
|  | Estimated Typical GAF Past Year - 45-55 |

(Tr. 468).   Dr. Kralik reported that Plaintiff did not report mental symptoms per se as limiting

him in any area.  She further found that Plaintiff's capacity to carry out activities of daily living

and daily adaptive functioning was estimated to be mildly to moderately impaired for

occupational purposes; his capacity to communicate and interact in a socially adequate manner

was estimated to be for the most part adequate for occupational purposes; his capacity to

communicate in an intelligible and effective manner was estimated to be generally adequate for

-9-

occupational purposes; his capacity to cope with the typical mental/cognitive demands of basic work-like tasks seemed for the most part adequate for occupational purposes; that his ability to attend and sustain concentration on basic tasks seemed mildly impaired; that his capacity to sustain persistence in completing tasks seemed problematic in association with his perception of pain, and likely in association with motivational issues as well; and that his capacity to complete work-like tasks within an acceptable time frame seemed for the most party mildly to moderately impaired for occupational purposes.  (Tr. 468).

On November 16, 2009, a Mental RFC Assessment was completed by non-examining consultant, Brad F. Williams, Ph.D. (Tr. 471-474).  Dr. Williams found Plaintiff was only moderately limited in 7 out of 20 categories, and not significantly limited in 13 out of 20 categories.  (Tr. 473).  Dr. Williams also concluded that Plaintiff was able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; complexity of tasks was learned and performed by rote, few variables, little judgment; supervision required was simple, direct and concrete (unskilled).  (Tr. 473).  Dr. Williams also completed a Psychiatric Review Technique form on the same date, and concluded that Plaintiff had mild degree of limitation in restriction of activities of daily living; a moderate degree of limitation in difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence, or pace; and had no episodes of decompensation, each of extended duration.  (Tr. 485).

On December 11, 2009, non-examining consultant, Dr. Bill Payne, completed a Physical RFC Assessment.  (Tr. 493-500).  Dr. Payne found that Plaintiff could occasionally lift and/or carry (including upward pulling) 50 pounds; frequently lift and/or carry (including upward

-10-

pulling) 25 pounds; could stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; could sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; could push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry. (Tr. 494). No postural, manipulative, visual, communicative, or environmental limitations were established. (Tr. 495-497). Dr. Payne found the medical records supported a medium RFC. (Tr. 500).

On February 4, 2010, Plaintiff presented himself to the Good Samaritan Clinic, complaining of back pain, right side hernia, and elevated blood pressure. (Tr. 511). He was assessed with: hypertension; right inguinal hernia, and chronic back pain. (Tr. 511). He was assessed with the same conditions on March 1, 2010 (Tr. 513), and on March 16, 2010, presented himself to St. Edward Mercy Medical Center, where he was referred for evaluation of his right inguinal hernia. (Tr. 518).

On May 3, 2010, Plaintiff presented himself to Good Samaritan Clinic for follow-up and was assessed with hypertension - not controlled; depression; and chronic low back pain. (Tr. 525). X-rays of his lumbar spine revealed: Levoscoliosis of the lumbar spine with the apex at the L2-3 level of approximately 8 degrees and mild disk space narrowing at all levels. (Tr. 526, 533). On June 1, 2010, the Good Samaritan Clinic assessed him with hypertension - poor control, and chronic low back pain. (Tr. 530).

On July 6, 2010, Plaintiff was assessed at Good Samaritan Clinic with well controlled hypertension, chronic back pain - controlled on current medications, and a stress test was ordered for his chest pain. (Tr. 529).

At the August 3, 2010 hearing, Plaintiff testified that his shoulder seemed to be doing

-11-

"alright now." (Tr. 540). He testified that he was still having trouble with his back and his knee. (Tr. 540-541). He testified that he was able to take care of his own personal care, hygiene, taking a shower, getting dressed, and usually ran the vacuum cleaner, and could wash the dishes a little at a time. (Tr. 541-542). He stated that he did not lift anything heavier than a gallon of milk, and that he had trouble sleeping at night. However, he also testified that he was on a muscle relaxer and blood pressure medication and that the muscle relaxer helped with the pain. (Tr. 544-546).

## IV.   Discussion:

In Plaintiff's 2 and ½ page appeal brief, it appears that Plaintiff is arguing that Plaintiff suffers from other severe impairments such as uncontrolled high blood pressure, low back pain, left sided carpel tunnel syndrome and left knee and shoulder problems, as well as depression and antisocial behavioral issues. (Doc. 4 at p. 2). Plaintiff also appears to argue that Plaintiff was limited to sedentary work rather than light work. For the following reasons, the Court finds Plaintiff's arguments to be without merit.

### A.  Impairments:

In his decision, the ALJ found that Plaintiff's hypertension did not cause more than minimal limitations on Plaintiff's ability to perform basic work activities. The Court believes the ALJ's conclusion is supported by substantial evidence. In spite of continued requests to quit smoking and drinking alcohol, Plaintiff continued to do both, although he did cut back on both. (Tr. 11, 302-302, 358-59, 363, 367-69, 376, 378, 384). Dr. Timothy C. Waack, a cardiologist, provided no specific limitations due to hypertension. (Tr. 11, 359-360). In addition, it appears from the record that when Plaintiff took his medication for blood pressure, it was controlled. (Tr. 38, 351, 302, 348, 344, 342, 340, 529). See Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir.

-12-

1992)(moderate hypertension does not prevent a claimant from working).  An impairment is not severe if it would have no more than a minimal effect upon a claimant's ability to work.  Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987).

With respect to Plaintiff's back pain, the ALJ noted that despite his problems, Plaintiff could take care of his personal hygiene and occasionally vacuumed, washed dishes, fixed meals, and could do some grocery shopping.  In addition, in a July 6, 2010 report from Good Samaritan Clinic, his back pain was reported as controlled on current medications. (Tr. 529).  The ALJ also discussed the examinations performed on Plaintiff - one by Dr. Reyenga and one by Dr. Floyd.  Dr. Reyenga reported  no limitation in Plaintiff's range of motion.  Dr. Floyd reported Plaintiff suffered from 80 out of 90 degrees of flexion in his lumbar spine.  She also found Plaintiff had "moderate" lifting and excessive bending limitations.  However, as noted by the ALJ, Dr. Floyd also diagnosed Plaintiff with an inguinal hernia, and she did not state that Plaintiff's limitations were due exclusively to his back pain.

In addition, Plaintiff testified that his shoulder was doing "alright" and that if he rotated his knee, it "twists every once in a while."

With respect to Plaintiff's alleged mental limitations, the ALJ found that Plaintiff's medically determinable mental impairments of alcohol dependence and depression, considered singly and in combination, did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and were therefore, nonsevere.  The undersigned believes there is substantial evidence to support this finding.  Plaintiff's daily activities, as well as his testimony, the reports of Dr LaGrand and Dr. Kralik, as well as the agency consultants, all support the finding that Plaintiff's depression and anxiety did not have more than a minimal

-13-

effect upon Plaintiff's ability to work.

Based upon the foregoing, the undersigned recommends that substantial evidence supports the ALJ's determination that Plaintiff's only severe impairment is his right inguinal hernia.

**B.      RFC Assessment:**

RFC is the most a person can do despite that person's limitations.   20 C.F.R. §404.1545(a)(1).   It is assessed using all relevant evidence in the record.   Id.   This includes medical records, observations of treating physicians and others, and the claimant's own description of his limitations.   Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).   Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).   The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).   Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).   "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."   Id.

The ALJ gave the state agency's first physical RFC form, completed by Dr. Jerry Mann, substantial weight because it was consistent with the record as a whole.   He also gave Dr. Rebecca Floyd's opinion substantial weight, noting that the ability to perform work at the light level was consistent with his limitations. (Tr. 15).   Both of these opinions support the ALJ's RFC Assessment.  A later Physical RFC Assessment, completed by Dr. Bill Payne on December

-14-

11, 2009, found Plaintiff capable of doing even heavier work - medium work, which the ALJ found to be inconsistent with Dr. Mann and Dr. Floyd, and therefore discounted it.

The undersigned believes that the ALJ's RFC assessment that Plaintiff could perform a full range of light work, is supported by substantial evidence.

**V.      Conclusion:**

Based upon the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of the undersigned's report and recommendation in which to file written objections pursuant to 28 U.S.C. §636 (b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 7th day of September, 2012.

/s/ *Erin L. Setser*
_____
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)